IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SILVER STATE LAND LLC,

        Plaintiff,

   v.

UNITED STATES,

        Defendant.

Civil Action No.   19-688 C

**COMPLAINT FOR BREACH OF CONTRACT AND DAMAGES**

      1.     This case involves a contract for the sale of a tract of public land within the City of Henderson, Nevada that was not completed because of the wrongful acts of Defendant, the United States of America, acting through the Bureau of Land Management and the U.S. Department of the Interior's Acting Assistant Secretary, Land and Minerals Management. Plaintiff Silver State Land LLC ("Silver State") entered into a contract on June 12, 2012, with the Bureau of Land Management ("BLM"), a federal agency and a sub-agency of the U.S. Department of the Interior ("Interior" or "Department"), to purchase a 480-acre parcel of public land in Henderson, Nevada. By accepting Silver State's offer, BLM entered into a binding and enforceable contract (the "Land Sale Contract") for the sale of the parcel of land to Silver State. Under the applicable BLM regulations, the only act that remained for BLM to perform after entering into the Land Sale Contract was the ministerial function of delivering the patent to the land to Silver State. This act never took place because of Defendant's breach.

      2.     On May 10, 2013, three days prior to the designated date upon which BLM was obligated to deliver the title to the land to Silver State, the Department's Acting Assistant Secretary, Land and Minerals Management, ("Assistant Secretary") issued a Decision

1

Memorandum terminating the sale. As a result, the BLM did not deliver to Silver State the patent to the land as required by the Land Sale Contract and the BLM regulations.

3. This action seeks: (1) a determination that the Defendant breached the Land Sale Contract; and (2) an assessment of monetary damages against Defendant for damages incurred by Silver State as a result of Defendant's breach.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), because Silver State had an express or implied contract with the Government of the United States, acting through BLM and Interior's Assistant Secretary, which contract Silver State alleges Defendant breached, causing Plaintiff monetary damages.

## PARTIES

5. Plaintiff Silver State Land LLC is a Delaware limited liability company and is the purchaser of the tract of public land at issue in this matter.

6. Defendant is the United States of America. The actions at issue in this lawsuit were performed by the Bureau of Land Management ("BLM"), an administrative agency within the Department of the Interior, which is charged with management of the public lands of the United States, and the Department's Assistant Secretary.

## FACTUAL ALLEGATIONS

7. On September 7, 2011, the City of Henderson, Nevada ("Henderson") nominated for sale, pursuant to Southern Nevada Public Land Management Act ("SNPLMA"), an approximately 480-acre parcel of public land (the "Land") in southern Nevada under the administration of the BLM.

8. Henderson requested that the BLM convey the nominated parcel by direct sale to Las Vegas National Sports Center LLC ("LVNSC"). Henderson justified its request for a direct sale by citing its desire to avoid speculative bidding and open competition with respect to the acquisition of the Land.

9. LVNSC and Henderson entered into a Master Project Agreement (the "Project Agreement") on or about October 18, 2011 for the development of multiple sports venues on the Land, along with other mixed-uses, including commercial and residential developments. The Project Agreement was subsequently amended on or about April 18, 2012 to impose certain financial closing deadlines. Under the Project Agreement, both Henderson and LVNSC had reciprocal and unilateral rights to terminate if either party believed the terms of the Project Agreement made the project non-viable.

10. On October 4, 2011, the BLM notified Henderson that the proposal did not rise to the level of a "public project" required by the BLM regulations to support a direct sale, but that a modified competitive bid process was appropriate.

11. Silver State, an affiliate of LVNSC, was substituted as the sale nominee early in 2012 with the consent of both Henderson and the BLM.

12. On April 4, 2012, the BLM published a Notice of Realty Action ("NORA") authorizing an auction using a modified competitive bidding process and setting June 4, 2012 as the date for the sale.

13. The NORA identified Silver State as the "designated bidder," thereby allowing Silver State to match the high bid, if any bidder outbid it.

14. On June 4, 2012, Silver State submitted a purchase offer in the form of a sealed bid in the amount of $10,560,000 to the BLM for the purchase of the Land. As required

by the terms of the sale, Silver State also included certified checks totaling $2,132,000. No other bids were submitted at the auction.

15. On June 12, 2012, the BLM confirmed that Silver State was the successful bidder for the Land and accepted Silver State's purchase offer, forming a binding Land Sale Contract.

16. On August 16, 2012, pursuant to the Land Sale Contract, BLM issued to Silver State Escrow Instructions, specifying the manner in which Silver State was to provide complete payment for the Land. Specifically, the BLM required Silver State to deposit with Nevada Title $8,428,000 on or before December 3, 2012. Under the Escrow Instructions, the BLM was obligated to issue the patent for the Land within 30 days of the deposit by Silver State.

17. On November 28, 2012, Silver State, as required by the Escrow Instructions and the Land Sale Contract, paid the remaining purchase price balance ($8,428,000) into escrow. With this payment, Silver State had performed all the requirements to complete the purchase of the Land from the BLM, thereby requiring the BLM to issue the patent for the Land within 30 days.

18. Subsequently, due to a series of events beyond Silver State's control, the BLM delayed issuance of the patent for the Land to Silver State.

19. On November 28, 2012, LVNSC terminated its Project Agreement with Henderson. The termination of the Project Agreement affected the potential issuance by Henderson of revenue bonds for the facilities to be constructed on the Land.

20. On November 29, 2012, Henderson sent a letter to the BLM asking the BLM to postpone issuance of the patent to Silver State, LVNSC's affiliate. Henderson claimed that it had been fraudulently induced into entering into the Project Agreement with LVNSC,

4

Silver State's affiliate.

21. On December 20, 2012, to facilitate discussions between Henderson and Silver State, the BLM and Silver State agreed to extend the escrow closing date until the first week of February 2013.

22. On January 28, 2013, Henderson filed suit in Nevada state court against Silver State and other parties alleging fraud related claims and contract claims. Silver State denied the allegations.

23. Based on the pending state court litigation, Silver State and the BLM agreed to a second escrow extension until March 29, 2013.

24. On or about March 7, 2013, only four weeks after the initial filing of Henderson's suit, the Nevada state court granted Silver State's motion to dismiss all the non-contract claims, as the state court determined there was no evidence whatsoever of fraud, and that those claims were completely unjustified.

25. On March 14, 2013, Henderson and Silver State fully and completely settled the remaining contract claims in the state court litigation, which resulted in the parties executing a Settlement Agreement. In the Settlement Agreement, Henderson and Silver State agreed that the Settlement Agreement was not to be considered an admission or acknowledgment as to liability or damages related to claims by either party.

26. Henderson provided the Solicitor's Office of the Department of the Interior with a copy of the Settlement Agreement.

27. On April 5, 2013, Henderson sent a letter to the BLM stating that Henderson no longer opposed the issuance of the patent to the land to Silver State.

28. Because the Settlement Agreement required time to implement, Silver

State and the BLM agreed to a third escrow extension to May 13, 2013.

29. On May 9, 2013, the BLM's Nevada State Office sent a draft patent to Silver State for its review.

30. On May 10, 2013, three days before BLM was obligated to deliver the patent under the Escrow Instructions and Land Sale Contract, as mutually extended, the Assistant Secretary issued a Decision Memorandum, identified as "Termination of Patent Issuance to Silver State Land LLC, for Land Nominated for Sale by the City of Henderson, Nevada for Arena Development Project," that purported to take jurisdiction over the matter.

31. The Decision Memorandum directed the BLM: (i) to not issue the patent to Silver State; (ii) to terminate the sale process; and (iii) to take the steps necessary to return the purchase deposit and bid guarantee to Silver State, as expeditiously as practicable.

32. The Decision Memorandum cites no authority for the ability to terminate the sale. It purports to approve a BLM recommendation, issued May 10, 2013, relating to the matter. Despite Silver State's requests on May 10, 11, 12 and 13, 2013, for a copy of the BLM recommendation upon which the Assistant Secretary relied, the recommendation was not provided until May 13, 2013, at 5:08 PM.

33. On May 13, 2013, the BLM failed to deliver the patent as required by the Land Sale Contract.

34. The BLM letter dated May 10, 2013 accompanying the Assistant Secretary's Decision Memorandum states: "This decision was based on the serious questions that arose subsequent to the BLM's acceptance of Silver State's purchase offer regarding the validity and veracity of the sports arena development agreement . . . ." Yet the BLM letter cites no findings, as required by the BLM regulations, regarding legal inconsistency, collusion or

6

encouragement of speculation upon which the decision to terminate the Land Sale Contract was made.

35. In fact, BLM never made any claim regarding inconsistency, collusion or speculation against Silver State.[1]

36. Further, the dispute that arose between Silver State and Henderson – which was related to local land use matters, not the conduct of the sale – was mostly disposed of by the state court and otherwise settled by the parties shortly thereafter. In fact, shortly after Silver State and Henderson executed the Settlement Agreement, Henderson delivered a letter to the BLM indicating the disagreement had been settled and that it no longer opposed issuance of the patent to Silver State.

37. Over the course of the nearly 12 months between when Silver State initially submitted its bid for $10,560,000 on June 4, 2012, and the date upon which BLM wrongfully terminated the Land Sale Contract on May 13, 2013, the value of the Land increased significantly.

38. In fact, on April 25, 2013, Land Advisors Organization, a consultant to Silver State, received a Letter of Intent from D.R. Horton, Inc. ("Horton"), expressing Horton's interest in purchasing a portion of the Land at the purchase price of $225,000 per acre.

39. The Land Sale Contract provided that Silver State was to pay BLM $22,000 per acre. Consequently, acre for acre, Horton's April 2013 Letter of Intent suggests that the value of the Land had increased by approximately 10 times since Silver State submitted its bid in June 2012.

---

[1] To the extent Henderson's allegations in the state court proceeding could be construed as alleging legal inconsistency, collusion, or speculation, BLM never adopted this position, and Henderson's claims were dismissed or otherwise settled.

40. Further, over the course of the 11 months between when BLM accepted Silver State's offer and when BLM wrongfully failed to convey title to the Land, Silver State had been expending significant costs through affiliated companies to develop the Land in reasonable reliance of Defendant's performance under the Land Sale Contract.

41. Plaintiff filed suit in District Court for the District of Columbia on May 15, 2013, to challenge the Department's action on grounds of violations of the Federal Land Policy and Management Act and the Administrative Procedures Act and seeking a court order to issue the patent. The District Court denied Plaintiff's relief on November 19, 2015. Plaintiff then timely appealed to the U.S. Court of Appeals for the District of Columbia Circuit. On December 16, 2016, the Court of Appeals upheld the District Court. Plaintiff sought a Panel Rehearing which was denied on February 10, 2017.  Litigation under the APA is complete, and no APA action is pending regarding this matter in any district court or court of appeals.

## FIRST CLAIM FOR RELIEF

### Breach of Express Contract

42. The paragraphs set forth above are realleged and incorporated herein by reference.

43. BLM's acceptance of Silver State's purchase offer bid, as evidenced by the BLM Decision Letter dated June 12, 2012, together with Silver State's payment of the remaining purchase amount for the Land into escrow, constituted an enforceable express contract for the sale of land, which obligated BLM to convey the Land within 30 days of Silver State's deposit in escrow of the remaining purchase amount.

44. While the Federal Land Policy and Management Act ("FLPMA") and BLM land sale regulations provide that the Secretary may lawfully terminate the land sale

process under certain circumstances, those circumstances do not apply here.

45. Specifically, section 203(g) of the FLPMA, 43 U.S.C. § 1713(g), allows the Secretary to withdraw a sale only within a certain statutorily prescribed timeline and only for certain reasons.

46. Section 203(g) provides that "the Secretary shall accept or reject, in writing, any offer to purchase made through competitive bidding . . . no later than thirty days after the receipt of such offer…. Prior to the expiration of such [30-day] period [] the Secretary may refuse to accept any offer or may withdraw any land or interest in land from sale under this section when he determines that consummation of the sale would not be consistent with this Act or other applicable law."

47. The BLM land sale regulations implementing Section 203(g) contain the same 30-day limitation as the statute relating to withdrawal of land from sale and provide additionally that "[p]rior to the expiration of such [30-day]period[] the authorized officer may refuse to accept any offer or may withdraw any tract from sale if he determines that: (1) Consummation of the sale would be inconsistent with the provisions of any existing law; or (2) Collusive or other activities have hindered or restrained free and open bidding; or (3) Consummation of the sale would encourage or promote speculation in public lands." 43 CFR § 2711.3-1(f).

48. Thus, Defendant's authority to withdraw any tract from sale is limited by both statute and regulation to 30 days after receipt of the purchaser's offer. The statute and regulations form binding terms of the Land Sale Contract. BLM received Silver State's purchase offer on June 4, 2012. Thus, the 30-day sale withdrawal authority expired on July 3, 2012.

49. Consequently, Defendant violated the Land Sale Contract by issuing the

Decision Memorandum terminating the sale.

50. The Decision Memorandum of the Assistant Secretary and the BLM's subsequent failure to deliver the patent by May 13, 2013, as required by the Land Sale Contract, constitute a breach of contract.

51. Defendant's breach of the Land Sale Contract with Silver State has directly caused Plaintiff substantial damages.

52. As a direct result of Defendant's breach, Silver State has suffered damages in excess of $98,000,000. These damages constitute the difference between the contract price for the land and the market value at the time of breach, plus Silver State's expenditures between June 2012 and May 2013 in reliance of BLM's promise to convey title.

## SECOND CLAIM FOR RELIEF

### Breach of Implied-In-Fact Contract

53. The paragraphs set forth above are realleged and incorporated by reference.

54. In the alternative, BLM's acceptance of Silver State's bid, as evidenced by the BLM Decision Letter dated June 12, 2012, together with Silver State's payment of the remaining purchase amount for the Land into escrow, constituted an enforceable implied-in-fact contract for the sale of land, which obligated BLM to convey the Land within 30 days of receipt of Silver State's deposit in escrow of the final purchase amount.

55. While the Federal Land Policy and Management Act ("FLPMA") and BLM land sale regulations provide that the Secretary may lawfully terminate the land sale process under certain circumstances, those circumstances do not apply here.

56. Specifically, section 203(g) of the FLPMA, 43 U.S.C. § 1713(g), allows

the Secretary to withdraw a sale only within a certain statutorily prescribed timeline and only for certain reasons.

57. Section 203(g) provides that "the Secretary shall accept or reject, in writing, any offer to purchase made through competitive bidding . . . no later than thirty days after the receipt of such offer…. Prior to the expiration of such [30-day] period [] the Secretary may refuse to accept any offer or may withdraw any land or interest in land from sale under this section when he determines that consummation of the sale would not be consistent with this Act or other applicable law."

58. The BLM land sale regulations implementing Section 203(g) contain the same 30-day limitation as the statute relating to withdrawal of land from sale and provide additionally that "[p]rior to the expiration of such [30-day]period[] the authorized officer may refuse to accept any offer or may withdraw any tract from sale if he determines that: (1) Consummation of the sale would be inconsistent with the provisions of any existing law; or (2) Collusive or other activities have hindered or restrained free and open bidding; or (3) Consummation of the sale would encourage or promote speculation in public lands." 43 CFR § 2711.3-1(f).

59. Thus, Defendant's authority to withdraw any tract from sale is limited by both statute and regulation to 30 days after receipt of the purchaser's offer. The statute and regulations form binding terms of the Land Sale Contract. BLM received Silver State's purchase offer on June 4, 2012. Thus, the 30-day sale withdrawal authority expired on July 3, 2012.

60. Consequently, Defendant violated the Land Sale Contract by issuing the Decision Memorandum terminating the sale.

61. The Decision Memorandum of the Assistant Secretary and the BLM's

11

subsequent failure to deliver the patent by May 13, 2013, as required by the Land Sale Contract, constitute a breach of contract.

62. Defendant's breach of the Land Sale Contract with Silver State has directly caused Plaintiff substantial damages.

63. As a direct result of Defendant's breach, Silver State has suffered damages in excess of $98,000,000. These damages constitute the difference between the contract price for the land and the market value at the time of breach, plus Silver State's expenditures between June 2012 and May 2013 in reliance of BLM's promise to convey title.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following

A. Award Silver State damages arising from BLM's and Assistant Secretary's unlawful breach of the Land Sale Contract, including, but not limited to:(i) the difference between Silver State's contract price and the fair market value of the Land at the time of BLM's breach; and (ii) expenditures Silver State made in reliance of the Land Sale Contract between June 12, 2012 and May 10, 2013.

B. That the Court enter judgment and an order awarding Plaintiff's costs and reasonable attorneys' fees; and

C. That the Court award such other relief as it deems proper to effectuate the purposes of this action.

DATE: May 9, 2019                                     Respectfully submitted,

**PERKINS COIE LLP**

By: */s/ Seth Locke*
Seth H. Locke
slocke@perkinscoie.com
Paul B. Smyth
psmyth@perkinscoie.com
Brenna D. Duncan
bduncan@perkinscoie.com
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Attorneys for Plaintiff